1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    FIRST MERCURY INSURANCE              CASE NO. C13-2110JLR
      COMPANY,

11                                          ORDER ON MOTION TO
                      Plaintiff,            DISMISS OR STAY

12

13             v.

      SQI, INC., et al.,

14
                      Defendants.

15

16    FIRST MERCURY INSURANCE              CASE NO. C13-2109JLR
      COMPANY,

17                    Plaintiff,

18             v.

19    SKYLINE SHEET METAL, INC., et al.,

20                    Defendants.

21

22

ORDER- 1

## I.   INTRODUCTION

Before the court is a motion to dismiss or stay brought by Defendants Ledcor Industries (USA) Inc. ("Ledcor"), and Admiral Way, LLC ("Admiral") and joined by Defendants SQI, Inc. ("SQI").  (Mot. (Dkt. # 29); SQI Not. of Joinder (Dkt. # 31).)  This is an insurance coverage dispute in a construction defects case.  In addition to this case, there are three cases that relate to the same underlying dispute currently pending in state court.  For this reason, Defendants move to dismiss or stay this action so that the issues can be decided in state court, bringing their motion under Federal Rule of Civil Procedure 19(b) and the *Brillhart* and *Colorado River* abstention doctrines.  (*See* Mot.)  Having examined all pertinent submissions as well as the relevant law, and having heard oral argument, the court agrees that a stay is the best course of action and GRANTS Defendants' motion (Dkt. # 29).

## II.   BACKGROUND

This dispute has a complex procedural history.  It involves at least 30 different insurance companies and 13 other parties that are not insurance companies.  (*See* Stolle Decl. (Dkt. # 30) Exs. 3, 6.)  What began as a lawsuit over roofing problems has spiraled into a veritable cornucopia of claims, cross-claims, coverage disputes, motions, and separate actions.

The underlying dispute involves construction defects in a mixed-use development known as the Admiral Way Condominiums ("the condos").  (Compl. (Dkt. # 1) ¶ 14.)  In 2007, the Admiral Condominium Owners' Association ("ACOA") brought a lawsuit against the owner and developer of the condos, Admiral.  (*Id.* ¶ 22.)  The lawsuit was

premised on problems with the roofing in the condos.  (*Id.* ¶ 19, 22.)  That lawsuit was

originally brought, and remains, in King County Superior Court.  (*See* Stolle Decl. Ex. 1.)

        Additional claims and lawsuits soon proliferated.  To date, there are at least five

separate lawsuits.  First, the owner and developer of the condos, Admiral, brought cross-

claims against the project's general contractor, Ledcor Industries (USA), Inc. ("Ledcor").

(Compl. ¶ 23.)  Next, Ledcor filed a separate lawsuit in King County Superior Court

against its subcontractors, including the two roofing subcontractors named in this action,

SQI and Skyline Sheet Metal, Inc. ("Skyline").[1]  (*Id.* ¶ 24-25.)  Soon, insurance

companies got involved.  Ledcor and each of the subcontractors each brought several

insurers into the dispute, and those insurers began to debate who had a duty to defend and

provide coverage for the alleged roofing defects.  (*See, e.g.*, Stolle Decl. Exs. 5-6.)  This

led to another action in King County Superior Court to sort out insurance coverage.  (*Id.*

Ex. 5.)  One of Ledcor's insurers, Zurich American Insurance Company, brought a claim

for declaratory judgment against Ledcor, Admiral, and ACOA, asking the court to

declare that Zurich had no duty to defend or indemnify those parties.  (*Id.* Ex. 4.)  Before

long, at least 30 insurance companies were named in the declaratory action, all of them

disputing, in one way or another, who would pay for the defense costs and liability

associated with the roofing defects.  (*See id.* Ex. 5-6.)  At present, the same judge

presides over the declaratory action and the subcontractor action:  the Honorable Richard

---

[1] Skyline has reached a settlement agreement in this matter and has withdrawn its joinder in Ledcor's motion.  (*See* Dkt. ## 56, 57.)

1    Eadie.  (*See id.* Ex. 13.)  In 2011, Judge Eadie issued a partial stay of the declaratory

2    action pending resolution of claims in the subcontractor action.  (*Id.* Ex. 16.)

3          Into this milieu strode Plaintiff First Mercury Insurance Company ("First

4    Mercury").  First Mercury is an insurer for named Defendants SQI and Skyline, and is

5    defending both in the state court subcontractor action.  (*See* Compl. ¶¶ 33-36.)  First

6    Mercury is also named in the state declaratory action and is having certain coverage

7    questions adjudicated there.  (*See* Stolle Decl. Ex. 5.)  Nevertheless, on November 20,

8    2013, First Mercury filed two complaints in federal court—one against SQI and the other

9    against Skyline.  (*See* 2/6/14 Order (Dkt. # 26) at 2-3.)  First Mercury asked the court to

10   declare that it had no duty to defend or indemnify SQI and Skyline.  (*See* Compl. ¶ 65.)

11   The SQI case was assigned to Chief Judge Marsha Pechman, and the Skyline case was

12   assigned to this court.  (*See id.*)  However, the SQI case was reassigned to this court as

13   related to the Skyline case, and the two cases were consolidated shortly thereafter.

14   (1/30/14 Order (Dkt. # 29); 2/6/14 Order at 6.)  Not long after that, Defendants filed a

15   motion to dismiss pursuant to Federal Rule of Civil Procedure 19 and the *Brillhart* and

16   *Colorado River* abstention doctrines.

17                           **III.   ANALYSIS**

18         As an initial matter, the court will address the abstention arguments before

19   reaching the Rule 19 arguments.  *See Wilbur v. Locke*, 423 F.3d 1101, 1106-07 (9th Cir.

20   2005) (holding that subject matter jurisdiction must be resolved before reaching Rule 19

21   arguments even where exercise of subject matter jurisdiction is discretionary), *abrogated*

22   *on other grounds*, *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010).

1    The federal abstention doctrines are an exception to the general rule that, "[a]bsent

2    significant countervailing interests, the federal courts are obligated to exercise their

3    jurisdiction." *Walnut Props., Inc. v. City of Whittier*, 861 F.2d 1102, 1106 (9th Cir. 1988)

4    (quoting *World Famous Drinking Emporium v. City of Tempe*, 820 F.2d 1079, 1082 (9th

5    Cir. 1987)).  Indeed, in the ordinary course of litigation, the mere existence of parallel

6    state court proceedings does not excuse a federal court from exercising its subject matter

7    jurisdiction.  *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817-18

8    (1976).  Instead, "the pendency of an action in state court is no bar to proceedings

9    concerning the same matter" in a federal court.  *Id.*  However, there are numerous

10   instances in which the existence of a parallel state court proceeding does justify a court in

11   declining to exercise its subject matter jurisdiction.  *See id.* at 813-17.  These instances

12   are embodied in the abstention doctrines.  *See id.*

13   **A.    Brillhart Abstention**

14       Most relevant to this case is the so-called *Brillhart* abstention doctrine.  Under that

15   doctrine, district courts have broad discretion to stay or dismiss actions seeking

16   declaratory judgment, as recognized in *Brillhart v. Excess Insurance Company of*

17   *America*, 316 U.S. 491, 494-95 (1942), and *Wilton v. Seven Falls Company*, 515 U.S.

18   277, 287 (1995).  *See also* 28 U.S.C. § 2201 (federal courts "*may* declare the rights and

19   other legal relations of any interested party seeking such declaration" (emphasis added)).

20   The *Brillhart* doctrine rests on concerns about judicial economy and cooperative

21   federalism.  *Brillhart*, 316 U.S. at 495.  In light of these concerns, district courts consider

22   three primary factors when evaluating whether to abstain from hearing a case under the

ORDER- 5

1    *Brillhart* doctrine:  "[1] avoiding 'needless determination of state law issues'; [2]

2    discouraging 'forum shopping'; and [3] avoiding 'duplicative litigation.'"  *R.R. St. & Co.*

3    *Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Emps. Ins. Co.*

4    *v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998)).  The court considers each of these factors

5    in turn.

6        1.  <u>Needlessly Determining State Law Issues</u>

7        First, courts decline jurisdiction under the Declaratory Judgment Act in order to

8    avoid needlessly determining state law issues.  *Id.*  District courts appropriately avoid

9    determining state law when:  state and federal cases raise the same "precise state law

10   issues," state law provides the rule of decision, and the federal case involves an area of

11   law expressly left to the states.  *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371

12   (9th Cir. 1991).  This factor counsels against exercising jurisdiction when "no compelling

13   federal interests are at stake."  *Transamerica Occidental Life Ins. Co.v. Digregorio*, 811

14   F.2d 1249, 1255 (9th Cir. 1987); *see also Robsac*, 947 F.2d at 1371.

15       All of these considerations suggest that abstention is appropriate here.  First, there

16   is already a parallel proceeding in state court where FMIC's coverage arguments could be

17   raised.  (*See* Stolle Decl. Ex. 5.)  There appears to be no reason why FMIC could not

18   simply join SQI in the state declaratory action and bring cross claims against it there.  At

19   oral argument, both sides represented that the issue could be adjudicated in state court

20   without any major procedural difficulties.  In fact, counsel represented that SQI recently

21   joined as a party in the state declaratory action.  That action is before the same judge as

22   the subcontractor action, making it a natural forum to decide the interrelated and fact-

1  specific coverage issues raised by FMIC.  *See Dizol*, 133 F.3d at 1225.  Second, there is

2  no dispute that state law provides the rule of decision.  All parties agree that Washington

3  law applies.  (*See* Resp. (Dkt. # 40) at 10-11 ("This determination involves well-

4  established Washington law.").)  Third, insurance law is an area of law expressly left to

5  the states.  15 U.S.C. 1011 ("Congress hereby declares that the continued regulation and

6  taxation by the several States of the business of insurance is in the public interest, and

7  that silence on the part of the Congress shall not be construed to impose any barrier to the

8  regulation or taxation of such business by the several States."); *Robsac*, 947 F.2d at 1371.

9  In light of these considerations, it appears to the court that there are no compelling federal

10  interests at stake in this case.  *See id.* at 1371, *overruled on other grounds by Dizol*, 133

11  F.3d 1220 ("Where, as in the case before us, the sole basis of jurisdiction is diversity of

12  citizenship, the federal interest is at its nadir."); *Digregorio*, 811 F.2d at 1255 (finding

13  abstention appropriate because the issues raised were "more appropriate for state court

14  resolution" and "[n]o compelling federal interests [were] at stake").

15      2. Forum Shopping

16      Second, courts decline jurisdiction over actions for declaratory relief to discourage

17  forum shopping.  *R.R. St. & Co.*, 656 F.3d at 975.  Congress did not intend to expand

18  federal jurisdiction by enacting the Declaratory Judgment Act, and a plaintiff may not use

19  this statute to bring a claim more properly raised in a pending state action.  *Int'l Ass'n of

20  Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995).  For this reason,

21  federal courts refuse to entertain reactive declaratory actions filed solely to gain a tactical

22  advantage.  *Id.* ("[T]he Declaratory Judgment Act is not to be used either for tactical

1   advantage by litigants or to open a new portal of entry to federal court for suits that are

2   essentially defensive or reactive to state actions."); *R.R. St. & Co.*, 656 F.3d at 976

3   (quoting *Robsac*, 947 F.2d at 1371).  The forum shopping analysis focuses on whether

4   the federal case is "reactive," but does not depend solely on timing of filing.  *See Moses*

5   *H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 17 n.20 (1983) (noting that

6   "despite chronological priority of filing," a suit may still be "a contrived, defensive

7   reaction" to a suit in another forum).

8        Courts examine the "sequence of events" leading to a federal action to determine

9   if a party engaged in forum shopping.  *See Int'l Ass'n of Entrepreneurs of Am.*, 58 F.3d at

10  1270.  For example, the Ninth Circuit in *Robsac* found that the plaintiff engaged in forum

11  shopping by filing a federal action in response to pending non-removable state court

12  proceedings.  *Robsac*, 947 F.2d at 1371.  Similarly, in *International Association of*

13  *Entrepreneurs*, the plaintiff attempted to remove the state case to federal court, but filed

14  an untimely petition.  *Int'l Ass'n of Entrepreneurs of Am.*, 58 F.3d at 1268.  Only after the

15  court denied its removal petition did plaintiff file suit in federal court, and the Eighth

16  Circuit affirmed the district court's decision to decline jurisdiction under these

17  circumstances.  *Id.* at 1270.  The district court properly did not allow plaintiff "to

18  circumvent the removal statute's deadline by using the Declaratory Judgment Act as a

19  convenient and temporally unlimited back door into federal court."  *Id.*

20       Based on the record before the court, it is not clear whether FMIC is engaged in

21  forum shopping.  Defendants point out that FMIC brought suit in federal court only after

22  Judge Eadie issued a partial stay in the state declaratory action.  However, the federal

ORDER- 8

1  actions were filed more than two years after the stay issued.  (*Compare* Stolle Decl. Ex.

2  16 (issued September 8, 2011) *with* Compl. (filed November 20, 2013).)  Thus, the

3  "sequence of events" does not compel a finding of forum shopping.  *See Int'l Ass'n of*

4  *Entrepreneurs of Am.*, 58 F.3d at 1270.  Further, as FMIC points out, FMIC "has already

5  obtained a favorable result in the State Declaratory Action" on some of its claims, further

6  undermining the theory that FMIC only filed in federal court in hopes of achieving a

7  more favorable outcome.  (*See* Resp. at 2.)  There is not enough evidence for the court to

8  conclude that FMIC filed this suit to gain a tactical advantage, unlike in *International*

9  *Association of Entrepreneurs* or *Robsac*.  Accordingly, this factor is neutral.

10      3.  Duplicative Litigation

11      Third, courts decline jurisdiction over actions for declaratory relief in order to

12  avoid duplicative litigation.  *R.R. St. & Co.*, 656 F.3d at 975.  The Ninth Circuit described

13  an example in *Railroad Street*, where it said duplicative litigation would result if

14  retaining jurisdiction "required the district court to address the same issues of state law

15  and policy interpretation that the state court had been grappling with for several years."

16  *Id.* at 976.

17      This factor weighs strongly in favor of abstaining.  There is already a substantial

18  amount of litigation occurring on related issues in state court.  (*See generally* Stolle Decl.

19  Exs. 1-11, 13-17.)  In particular, there is already a declaratory judgment action pending

20  that seeks to clarify the coverage issues at the heart of this dispute.  (*Id.* Ex. 5-6.)  That

21  action is presided over by a judge who, for several years, has been grappling with the

22  issues of law and insurance policy interpretation that are closely related to those FMIC

1  would have this court decide.  (*Id.* Exs. 13-17.)  Judge Eadie has invested substantial time

2  and resources in this case, and has a significant advantage over this court in terms of

3  factual familiarity and an understanding of the legal ramifications of various possible

4  policy interpretations or factual findings.  (*See id.*)  And while there is presently no court

5  addressing FMIC's coverage arguments as between these exact parties, exercising

6  jurisdiction would nevertheless cause duplicative and unnecessary litigation.  These

7  issues should be resolved by Judge Eadie in the state declaratory action, not here.

8       4.  Other Factors

9       In addition to the three primary factors described above, courts in the Ninth Circuit

10  consider secondary factors as well.  These factors include:

11       [1] whether the declaratory action will settle all aspects of the controversy;
         [2] whether the declaratory action will serve a useful purpose in clarifying
12       the legal relations at issue; [3] whether the declaratory action is being
         sought merely for the purpose of procedural fencing or to obtain a 'res
13       judicata' advantage; or [4] whether the use of a declaratory action will
         result in entanglement between the federal and state court systems.  In
14       addition, the district court might also consider [5] the convenience of the
         parties; and [6] the availability and relative convenience of other remedies.

15  *Dizol*, 133 F.3d at 1225 n.5.

16       None of these factors suggest that exercising jurisdiction would be an appropriate

17  course of action.  This declaratory action would not come close to settling all aspects of

18  the overarching controversy, particularly since FMIC's coverage findings are likely

19  intertwined with those of other subcontractors.  Further, deciding these issues creates a

20  risk of entanglement between the federal and state court systems.  Deciding this case

21  would likely involve finding facts and deciding issues that would have an effect on not

22

1  only the state declaratory action, but possibly the subcontractor action and the underlying

2  liability action as well.  Finally, there is another convenient remedy available to FMIC:

3  to seek relief against SQI in the state declaratory action.

4         The court has considered all relevant factors and concludes that abstention under

5  the *Brillhart* doctrine is the best path forward.  Accordingly, the court will STAY this

6  case indefinitely until such time as either party demonstrates that the circumstances have

7  changed sufficiently that *Brillhart* abstention is no longer appropriate.

8  **B.**    **Non-Declaratory Claims**

9         Defendants' answers to FMIC's complaint seek non-declaratory relief against

10  FMIC.  (*See, e.g.*, Ledcor Ans. (Dkt. # 22).)  Defendants raise the concern that *Brillhart*

11  abstention may not apply to these claims.  (Mot. at 18-19.)  The court does not reach this

12  issue, concluding that even if *Brillhart* did not apply to these claims, a stay would be

13  appropriate under the court's inherent authority to stay proceedings before it.  *See*

14  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005); *Landis v. N. Am. Co.*, 299

15  U.S. 248, 254 (1936); *see also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077

16  (3rd Cir. 1983).  The circumstances in this case also support a stay under the standards

17  applicable when the court stays a case pursuant to its inherent authority.  *See CMAX, Inc.*

18  *v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55); *see also*

19  *Lockyer*, 398 F.3d at 1109.

20  //

21  //

22  //

1

## IV.    CONCLUSION

2          For the reasons described above, the court GRANTS Defendants' motion (Dkt.

3    # 29) and STAYS this case indefinitely until such time as either party demonstrates that

4    the circumstances have changed sufficiently that *Brillhart* abstention is no longer

5    appropriate and the case should proceed.  If any event occurs that justifies either a lifting

6    of the stay or dismissal of the case, the parties shall notify the court within ten days.  The

7    court also STRIKES FMIC's pending summary judgment motion in light of the stay

8    (Dkt. # 58).

9          Dated this 3rd day of April, 2014.

10

11   _____

12   JAMES L. ROBART
     United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER- 12